## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEKRI, INC.** ) | |
| 1205 West Cumberland Gap Parkway ) | |
| Corbin, KY 40701 ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | |
| **v.** )` | |
| ) | |
| **UNITED STATES OF AMERICA** ) | **No.**_____ |
| Serve: Attorney General of the United States ) | |
| U.S. Department of Justice ) | |
| 950 Pennsylvania Avenue, NW ) | |
| Washington, DC 20530-0001 ) | |
| ) | |
| US Attorney's Office ) | |
| 555 4th St NW, Washington, DC 20530 ) | |
| ) | |
| **DEFENDANT.** ) | |

## COMPLAINT

1.      Plaintiff SEKRI, Inc. ("SEKRI"), a/k/a Southeastern Kentucky Rehabilitation Industries, Inc., by and through its undersigned counsel, respectfully files this action for judicial review of final agency action by Defendant the United States of America, acting through the U.S. Department of Defense ("DOD") and the Committee for Purchase from People Who Are Blind or Severely Disabled (the "Committee"), in violation of the Javits-Wagner-O'Day ("JWOD") Act, and regulations promulgated thereunder.

## PARTIES

2.      Plaintiff SEKRI is a non-profit corporation with offices at 1205 West Cumberland Gap Parkway, Corbin, KY 40701.  SEKRI employs the disabled.

3.      Defendant is the United States of America (the "United States"), acting through its U.S. DOD and the Committee, both of which are agencies of the United States.  The address of DOD is Washington, DC 20301-1000.  The address of the Committee is 1401 S. Clark Street, Suite 715, Arlington, VA 22202-3259.  The United States is represented by Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001, and the U.S. Attorney for the District of Columbia, 555 4th St NW, Washington, DC 20530.

## JURISDICTION AND VENUE

4.      This is a civil action arising under the laws of the United States.  28 U.S.C. § 1331.  SEKRI seeks injunctive and declaratory relief.  The Court has the authority to issue a declaratory judgment under 28 U.S.C. § 2201.  Venue is proper here under 28 U.S.C. § 1391(e)(1).

5.      SEKRI asserts jurisdiction and the waiver of sovereign immunity under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06, and the "Little Tucker Act," 28 U.S.C. § 1346.  Under the "Little Tucker Act," this is a "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon . . . an[] Act of Congress, [and] regulation[s] of an executive department."  SEKRI is seeking only injunctive and declaratory relief in this action, not money damages exceeding $10,000.

6.      The "Big Tucker Act," 28 U.S.C. § 1491(b), establishes exclusive jurisdiction in the U.S. Court of Federal Claims ("CFC") for an action "*by an interested party* objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection

with a procurement or a proposed procurement."[1]  (Emphasis added.)  The Competition in Contract Act ("CICA") supplies this definition of the term "interested party": "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  31 USC § 3551(2).

7.     SEKRI, believing that this "carve-out" of exclusive CFC jurisdiction applied to this case, actually filed a civil action in the CFC.  *SEKRI, Inc. v. United States,* No. 21-778 (Fed. Cl. filed Jan. 21, 2021).  The CFC, however, ruled that the "Big Tucker Act" "carve-out" did not apply to these circumstances, because SEKRI (the court ruled) is not "an actual or prospective bidder or offeror,"[2] and thus not an "interested party" falling within the scope of the CFC's exclusive jurisdiction under the "Big Tucker Act."  Therefore, the CFC dismissed SEKRI's CFC action.[3]

8.     The United States initially disagreed with the CFC that these circumstances fell outside the "Big Tucker Act's" "carve-out" of exclusive jurisdiction.  When SEKRI appealed, however, the United States reversed its position, and argued to the U.S. Court of Appeals for the Federal Circuit that that "carve-out" of exclusive CFC jurisdiction does *not* apply to these circumstances.

9.     If one thing is certain at this point, it is that the final agency action at issue in this case is *not* "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  The import of the APA and the Tucker Act (both "Big" and "Little") is to confer legal recourse when the

---

[1] The U.S. Court of Appeals for the Federal Circuit has held that CFC jurisdiction of such an action is exclusive.

[2] Specifically, the court ruled that SEKRI does not submit bids or offers for the work that it receives.

[3] In oral argument on the United States's motion to dismiss, the CFC judge, evidently sensing that SEKRI might be trapped in a game of "jurisdictional ping-pong," suggested that SEKRI file an action in federal district court.

Government does something wrong.[4]  "[W]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."  *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 396 (1971).  Therefore, it follows that there is judicial review *somewhere,* and if that is not in the CFC, under the "Big Tucker Act," then it is here.

## The Committee for Purchase From People Who Are Blind or Severely Disabled, and the Procurement List

10.     SEKRI operates workshops for the disabled.  It produces military equipment called the Advanced Tactical Assault Panel ("ATAP"), and sells it to the United States.  The U.S. Army uses the ATAP.  The ATAP is an item on a formal list called the "Procurement List."  All items on that list, by statute and regulation, must be acquired from workshops for the blind or disabled, like SEKRI.  The final agency action under review is DOD's decision not to continue to acquire the ATAP from workshops for the blind or disabled, including SEKRI.

11.     SEKRI seeks review of the agency's decision pursuant to APA standards of judicial review, 5 U.S.C. § 706, or as violations of an Act of Congress or executive branch regulations, under the Little Tucker Act.  The positive law applicable to this action is derived from one statute, 41 U.S.C. §§ 8501-06, and two regulations, 41 C.F.R. Part 51 and 48 C.F.R. Subpart 8.7.

12.     The statutory scheme at issue in this case is established by 41 U.S.C. ch. 85, entitled "Committee for Purchase from People Who Are Blind or Severely Disabled."  41 U.S.C. §§ 8501-06.  This law also is known as the JWOD Act.

---

[4] The same might be said of the Fifth Amendment, which amounts to a waiver of sovereign immunity when a person is deprived of life, liberty or property.  U.S. Const. amend V.

4

13.    The JWOD Act establishes the Committee for Purchase From People Who Are Blind or Severely Disabled, *i.e.,* the Committee. *Id.* § 8501(2) & 8502(a); 41 C.F.R. § 51-1.3; FAR 8.701 & 8.702.  Eleven of the 15 members of the Committee are appointed by federal agencies, including one appointed by the Secretary of Defense.  41 U.S.C. § 8502(b); 41 C.F.R. § 51-2.1.

14.    The Committee has promulgated regulations.  41 C.F.R. Part 51.  The Federal Acquisition Regulation ("FAR") Secretariat also has promulgated regulations implementing and supplementing the JWOD Act, in Title 48 of the Code of Federal Regulations.  FAR Subpart 8.7. The FAR regulations apply to DOD.  FAR 1.101.

15.    SEKRI qualifies under the JWOD Act as a "qualified nonprofit agency for other severely disabled" workers.  Such an agency is defined as follows:

(6) Qualified nonprofit agency for other severely disabled.—The term "qualified nonprofit agency for other severely disabled" means an agency—
       (A)(i) organized under the laws of the United States or a State;
            (ii) operated in the interest of severely disabled individuals who are not blind[5]; and
            (iii) of which no part of the net income of the agency inures to the benefit of a shareholder or other individual;
       (B) that complies with any applicable occupational health and safety standard prescribed by the Secretary of Labor; and
       (C) that in the production of products and in the provision of services (whether or not the products or services are procured under this chapter) during the fiscal year

---

[5] (8) Severely disabled individual.—The term "severely disabled individual" means an individual or class of individuals under a physical or mental disability, other than blindness, which (according to criteria established by the Committee after consultation with appropriate entities of the Federal Government and taking into account the views of non-Federal Government entities representing the disabled) constitutes a substantial handicap to employment and is of a nature that prevents the individual from currently engaging in normal competitive employment.

*Id.* § 8501(8).

employs blind or other severely disabled individuals for at least 75 percent of the hours of direct labor[6] required for the production or provision of the products or services.

41 U.S.C. § 8501(6); *accord* 41 C.F.R. § 51-1.3.

16.     The JWOD Act, enacted in 1938, establishes a mandatory source of supply for certain federal purchases.  52 Stat. 1196, June 25, 1938, ch. 697, §3; *see* FAR Part 8.6.  This is "the statutory mandate that items on the Procurement List be purchased from qualified nonprofit agencies."  41 C.F.R. § 51-2.2(e).  This program is known as the AbilityOne Program.  *Id.* § 51-1.3.

17.     The Defense Logistics Agency ("DLA"), is an agency within DOD, and an entity of the federal government to which that rule applies.  It is within the scope established by the JWOD Act in its definition of the term "federal government":

> (4) Entity of the federal government and federal government.—The terms "entity of the Federal Government" and "Federal Government" include an entity of the legislative or judicial branch, a military department or executive agency (as defined in sections 102 and 105 of title 5, respectively), the United States Postal Service, and a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces.

*Id.* § 8501(4); *accord* 41 C.F.R. § 51-1; FAR 8.701.

18.     The Committee establishes the mandatory source of supply via a "Procurement List":

> (a) Procurement List.—
>
> (1) Maintenance of list.—The Committee shall maintain and publish in the Federal Register a procurement list. The list shall include the following products and services determined by the Committee to be suitable for the Federal Government to procure pursuant to this chapter:

---

[6] (3) Direct labor.—The term "direct labor"—
   (A) includes all work required for preparation, processing, and packing of a product, or work directly relating to the performance of a service; but
   (B) does not include supervision, administration, inspection, or shipping.

*Id. §* 8501(3).

(A) Products produced by a qualified nonprofit agency for the blind or by a qualified nonprofit agency for other severely disabled.
(B) The services those agencies provide.

(2) Changes to list.—The Committee may, by rule made in accordance with the requirements of section 553(b) to (e) of title 5, add to and remove from the procurement list products so produced and services so provided.

41 U.S.C. § 8503; 41 C.F.R. § 51-1.3.  The FAR further describes the Procurement List, referring to DLA:

The Committee maintains a Procurement List of all supplies and services required to be purchased from AbilityOne participating nonprofit agencies. The Procurement List may be accessed at: http://www.abilityone.gov . . . .

GSA, DLA, and VA are central supply agencies from which other Federal agencies are required to purchase certain supply items on the Procurement List.

FAR 8.703.  In other words, items on the Procurement List that are within DLA's purchase authority for other federal agencies must be purchased by DLA from an AbilityOne nonprofit agency like SEKRI, and then provided by DLA to the other agencies.

19.     The Committee adds items to the Procurement List whenever those items are "suitable to be furnished by qualified nonprofit agencies employing persons who are blind or have other severe disabilities."  41 C.F.R. § 51-2.2(b).[7]  As explained below, that determination has been made here, with respect to the ATAP.

20.     An item that is on the Procurement List remains on the Procurement List unless (or until) the Committee determines that:

none of the nonprofit agencies participating in the AbilityOne Program are capable and desirous of furnishing the commodity or service to the Government, or if the Committee decides that the commodity or service is no longer suitable for procurement from nonprofit agencies employing people who are blind or have other severe disabilities.

---

[7] Under the Committee's regulations, "suitability" is determined by employment potential, nonprofit agency qualifications, capability and "level of impact on the current contractor for the commodity.'  41 C.F.R. § 51-2.4(a).

7

*Id.* § 51-6.8(e).  No such determination has been made here.

21.     In 41 U.S.C. § 8504(a), the JWOD Act establishes the mandatory source of supply for every item on the Procurement List, as follows:

**§8504. Procurement requirements for the Federal Government**

(a) In General.—An entity of the Federal Government intending to procure a product or service on the procurement list referred to in section 8503 of this title shall procure the product or service from a qualified nonprofit agency for the blind or a qualified nonprofit agency for other severely disabled in accordance with regulations of the Committee and at the price the Committee establishes if the product or service is available within the period required by the entity.

*Id.*[8]  A Committee regulation confirms this:

(a) The JWOD Act mandates that commodities or services on the Procurement List required by Government entities be procured, as prescribed in this regulation, from a nonprofit agency employing persons who are blind or have other severe disabilities, at a price established by the Committee, if that commodity or service is available within the normal period required by that Government entity. Except [for Federal Prison Industries production], the JWOD Act has priority, under the provisions of 41 U.S.C. 48, over any other supplier of the Government's requirements for commodities and services on the Committee's Procurement List.

41 C.F.R. § 51-1.2(a).  Products on the list "**shall** be procured by Government departments and agencies under the JWOD Act from the nonprofit agency(ies) designated by the Committee." *Id.* § 51-2.8 (emphasis added).

§ 51-5.2 Mandatory source requirement.

(a) Nonprofit agencies designated by the Committee are mandatory sources of supply for all entities of the Government for commodities and services included on the Procurement List, as provided in § 51-1.2 of this chapter.

(b) Purchases of commodities on the Procurement List by entities of the Government shall be made from sources authorized by the Committee.

*Id.* § 51-5.2.  The FAR elaborates on this, as follows:

---

[8] 41 U.S.C. § 8504(b) establishes a higher priority for Federal Prison Industries production; that is not relevant here.

(a)   41 U.S.C. chapter 85 requires the Government to purchase supplies or services on the Procurement List, at prices established by the Committee, from AbilityOne participating nonprofit agencies if they are available within the period required. . . .

(b) No other provision of the FAR shall be construed as permitting an exception to the mandatory purchase of items on the Procurement List.

FAR 8.704.  This rule expressly applies to DLA:

Supply distribution facilities in DLA and GSA shall obtain supplies on the Procurement List from the central nonprofit agency identified or its designated AbilityOne participating nonprofit agency.

FAR 8.705-1(b); *accord* 41 C.F.R. § 51-5.2.[9]

22.     Notably, this mandatory source of supply rule applies not only to listed items, but even – "automatically" -- to "replacement commodities," "variations," and "essentially the same," or "similar" items.  Hence the Committee regulations provide that:

§ 51-6.13 Replacement and similar commodities.

(a) When a commodity on the Procurement List is replaced by another commodity which has not been recently procured, and a nonprofit agency can furnish the replacement commodity in accordance with the Government's quality standards and delivery schedules, **the replacement commodity is automatically considered to be on the Procurement List and shall be procured from the nonprofit agency designated by the Committee** at the fair market price the Committee has set for the replacement commodity. The commodity being replaced shall continue to be included on the Procurement List until there is no longer a Government requirement for that commodity.

(b) If contracting activities desire to procure additional sizes, colors, or other **variations** of a commodity after the commodity is added to the Procurement List, and these similar commodities have not recently been procured, **these commodities are also automatically considered to be on the Procurement List.**

---

[9] The Committee's regulations do allow for procurement from commercial sources, but only under conditions that do not apply here, and following procedures that have not been followed here.  FAR 8.706.  Commercial sources are forbidden because SEKRI can provide the supplies within the time required, and economically (a determination that was made when the ATAP was added to the Procurement List).  *Cf.* FAR 8.706(b).  No purchase exception has been granted by the designated central nonprofit agency.  FAR 8.706(a).  No quantity or delivery and performance period for any commercial sourcing has been specified.  FAR 8.706(c).  The Committee itself has not granted a purchase exception for any commercial source.  FAR 8.706(e).

(c) In accordance with § 51-5.3 of this chapter, contracting activities are not permitted to purchase commercial items that are **essentially the same** as commodities on the Procurement List.

41 C.F.R. § § 51-6.13 (emphasis added).

23.     Similarly, the FAR provides that:

**8.715 Replacement commodities.**

When a commodity on the Procurement List is replaced by another commodity which has not been previously acquired, and a qualified AbilityOne participating nonprofit agency can furnish the replacement commodity in accordance with the Government's quality standards and delivery schedules and at a fair market price, the replacement commodity is automatically on the Procurement List and shall be acquired from the AbilityOne participating nonprofit agency designated by the Committee. The commodity being replaced shall continue to be included on the Procurement List until there is no longer a requirement for that commodity.

FAR 8.715.  The Committee's Procurement List website further explains:

**Important:** If you do not see an exact or identical match to the product you need, you should also check to see whether the AbilityOne Program offers an "*essentially the same*" item that meets your requirements. If so, the AbilityOne Program remains a mandatory source for your purchase.

For example, the AbilityOne Program offers mouse pads in blue, gray and red. If you are searching for a pink mouse pad, you will not see an identical match. However, for items with the same form, fit and function, where the color does not affect performance, you should not buy around the AbilityOne Program to obtain a commercial item. You should buy the AbilityOne product whenever it meets your need. In this example, you should purchase any color mouse pad furnished by the AbilityOne Program.

https://pl.abilityone.gov/procurement_search/procurement_product_search.aspx

24.     In connection with this, the Committee's regulations impose specific duties on

federal contracting activities:

For items which appear to be **suitable** to be furnished by nonprofit agencies, the contracting activity should refer the candidate commodities and services to the Committee or a central nonprofit agency. If a contracting activity decides to procure one or more commodities which are **similar to** a commodity or commodities on the Procurement List, the contracting activity should refer the commodities it intends to procure to the Committee or a central nonprofit agency.

> Contracting activities shall provide the Committee and designated central nonprofit agencies with information needed to enable the Committee to determine whether a commodity or service is suitable to be furnished by a nonprofit agency. For commodities, information such as the latest solicitation and amendments, bid abstracts, procurement history, estimated annual usage quantities, and anticipated date of next solicitation issuance and opening may be needed.

41 C.F.R. § 51-5.1.[10]  The Committee's regulations explain this statutory/regulatory scheme, in terms of policy, as follows:

> § 51-1.1 Policy.
>
> (a) It is the policy of the Government to increase employment and training opportunities for persons who are blind or have other severe disabilities through the purchase of commodities and services from qualified nonprofit agencies employing persons who are blind or have other severe disabilities. The Committee for Purchase from People who are Blind or Severely Disabled (hereinafter the Committee) was established by the Javits-Wagner-O'Day Act, Public Law 92-28, 85 Stat. 77 (1971), as amended, 41 U.S.C. 46-48c (hereinafter the JWOD Act). The Committee is responsible for implementation of a comprehensive program designed to enforce this policy.
>
> (b) It is the policy of the Committee to encourage all Federal entities and employees to provide the necessary support to ensure that the JWOD Act is implemented in an effective manner. This support includes purchase of products and services published on the Committee's Procurement List through appropriate channels from nonprofit agencies employing persons who are blind or have other severe disabilities designated by the Committee; recommendations to the Committee of new commodities and services suitable for addition to the Procurement List; and cooperation with the Committee and the central nonprofit agencies in the provision of such data as the Committee may decide is necessary to determine suitability for addition to the Procurement List.

41 C.F.R. § 51-1.1.

25.    The Committee's regulations provide that the JWOD Act mandate extends not only to supplies acquired by the federal government, but also to mandated supplies incorporated in other supplies that commercial suppliers (*i.e.,* "other persons") sell to the Government:

> § 51-5.2 Mandatory source requirement.

---

[10] A "central nonprofit agency" coordinates between the Committee and a nonprofit agency like SEKRI.  SEKRI's central nonprofit agency is SourceAmerica, formerly known as National Industries for the Severely Handicapped ("NISH").

(c) Contracting activities shall require other persons providing commodities which are on the Procurement List to entities of the Government by contract to order these commodities from the sources authorized by the Committee. . . .

(e) Contracting activities procuring services which have included within them services on the Procurement List shall require their contractors for the larger service requirement to procure the included Procurement List services from nonprofit agencies designated by the Committee.

41 C.F.R. § 51-1.1.

### **SEKRI and the ATAP**

26.     The ATAP appears on the Procurement List as follows:

| CNA | NSN | Name | Description | Department | Agency |
| --- | --- | --- | --- | --- | --- |

12

| SourceAmerica | 8465-01-682-0448 | Advanced Tactical Assault Panel (A-TAP) | Advanced Tactical Assault Panel (ATAP) is a fighting load carrier to be worn with a parachute harness. It can be configured with the Modular Lightweight Load-carrying Equipment (MOLLE) webbing to attach pouches for 6 or more M4 magazines, two grenades, an Individual First Aid Kit (IFAK) and canteen/general purpose pouches. Two side release buckles on the ATAP allow the pouch panels to be lowered below the reserve parachute when rigged for airborne operations with the parachute harness. The ATAP enables the paratrooper's fighting load to be in a ready to fight configuration when reaching the drop zone. The base fabric of the ATAP is 1000 denier nylon cordura in OCP 2015 pattern. UOI is EA. | DEPT OF DEFENSE | W6QK ACC-APG NATICK |

27.     In a letter from the Committee to the U.S. Army dated April 1, 2019, the

Committee designated SEKRI as the "Mandatory Source of Supply" for this item.  By letter to

the U.S. Army dated Oct. 25, 2019, the Committee changed the price of the item, and it directed

that SEKRI is the mandatory source of supply for "100% of the requirement of the U.S. Army."

28.     SEKRI has received, and performed, two contracts for the ATAP, *i.e.,* Contract

Nos. W911QY-17-P-0154 and W911QY-19-C-0057.  SEKRI produced 250 ATAP units under

13

the former contract, which the U.S. Army used for field testing.  Under the latter contract,

SEKRI received an initial award for 47,854 ATAP units, and Modification No. P00005 added

71,000 more ATAP units.  The latter contract is currently in production.  SEKRI and its disabled

workforce would be irreparably injured if the Government were to obtain the ATAP from

another source, including a commercial supplier, rather than from continued production by

SEKRI.

## **DLA**

29.    On Nov. 16, 2017, DLA made a public presentation including a slide that read as

follows:[11]

### Advanced Tactical Assault Panel (A-TAP)

#### Where We Are:
• The A-TAP is the new fighting load carrier for the Army.
• It is made of textured nylon, mesh, webbing, brass, and acetal
hardware.
• In FY18, the A-TAP was tested with the Airborne community and
conventional Infantry
• Test reports are complete

#### Where We Want To Go:
• Current design of the A-TAP will need to be slightly modified to allow for full compatibility
with Modular Scalable Vest (MSV)
• Based on test report findings, modifications and retest may take place in FY19
• Procurement announcements are not expected until late FY19

30.    In violation of law, DLA has failed to refer the ATAP to the Committee or a

central nonprofit agency.  The Committee already has determined that the ATAP is suitable to be

furnished by a non-profit agency (*i.e.,* SEKRI), but in any event, DLA also failed to provide the

Committee or a central nonprofit agency with the information needed to enable the Committee to

---

[11] https://careersdocbox.com/US_Military/120617851-Defense-logistics-agency-the-nation-s-
combat-logistics-support-agency.html

determine whether the ATAP is suitable to be furnished by a non-profit agency.  This is in

violation of 41 C.F.R. § 51-5.1.

31.     On March 30, 2020, DLA awarded a contract (the "TAP Contract") to Propper

International, Inc., announcing the following information:

> MOLLE RIFLEMAN SET W/TAP - Definitive Contract SPE1C120C0006 is a Firm
> Fixed Price Federal Contract Award. It was awarded to Propper International, Inc. on
> Mar 30, 2020. The definitive contract is funded by the Clothing and Textiles (DOD -
> DLA). The potential value of the award is $63,760,444. The NAICS Category for the
> award is 315990 - Apparel Accessories and Other Apparel Manufacturing. The PSC
> Category is 8465 - Individual Equipment

"TAP" is a reference to the Tactical Assault Panel, *i.e.,* the "un-advanced" version of the ATAP.

"MOLLE" is a reference to an "ensemble" of equipment, the "Modular Lightweight Load

Carrying Equipment," which includes the TAP or ATAP.

32.     On April 21, 2020, DLA gave the following public notice, evidently through

SAM.gov, of an *amendment* to the solicitation under which it had awarded the TAP Contract

(even though award had already been made):

> This notice applies to Lot #2 of solicitation SPE1C1-19-R-0021 only.  This acquisition is
> for the manufacture and delivery of the Rifleman's Set with Advanced Tactical Assault
> Panel (ATAP) and its associated components in accordance with purchase descriptions
> GL-PD-05-03C dated 13 May 2015 and CO-PD-02-02N dated 24 September 2019.  The
> Rifleman's Set w/ATAP is a part of the Modular Lightweight Load Carrying Equipment
> (MOLLE) ensemble.  This acquisition for Lot #2 will result in the award of a single, firm
> fixed-price, long-term Indefinite Delivery, Indefinite Quantity (IDIQ) contract consisting
> of a one (1) year base term and two (2), one (1) year option terms.  Items and annual
> quantities are to be procured as follows:
> 1. Rifleman Set w/ATAP – NSN 8465-01-686-5578
> Base Year and Option Years 1 & 2
> Guaranteed Minimum Quantity: 36,250
> Annual Estimated Quantity: 145,000
> Annual Order Limitation Quantity: 181,250
> [14 other items listed] . . .
>
> 16. Advanced Tactical Assault Panel – 8465-01-682-0448
> Base Year and Option Years 1 & 2
> Guaranteed Minimum Quantity: 32,700

Annual Estimated Quantity: 130,800
Annual Order Limitation Quantity: 163,500
[four other items listed] . . . .

2. This acquisition will utilize Best Value, Trade-Off Source Selection Procedures in accordance with the DoD Source Selection Procedures dated March 31, 2016. The solicitation's evaluation factors, which are listed in descending order of importance, will include Product Demonstration Models, Past Performance – Performance Confidence Assessment and Socioeconomic Program Support.

3. Price Evaluation: All offered prices will be evaluated against the requirements of the solicitation. The offered prices (and if requested with initial proposal or during discussions, cost or pricing data or information other than cost or pricing data) will be evaluated in accordance with FAR 15.4 to ensure that award will be made at fair and reasonable prices.

4. For the first delivery order, the following items will have an initial production lead-time of 180 days after award: Rifleman Set with Advanced Technical Assault Panel (ATAP), Advanced Technical Assault Panel (ATAP), 1 Qt. Canteen, General Purpose Pouch, Medium Rucksack Set, Assault Pack, M4 Two Magazine Pouch. For all other components, the initial production lead-time for the first delivery order will be 240 days after award.  Deliveries shall be made to Austin, TX, Pendergrass, GA, and Lansing, MI.

5. The planned acquisition will be issued on an Unrestricted Basis with 10% HUBZone Preference. The Government intends to make a single award to the responsible offeror whose proposal meets all terms and conditions of the solicitation, is determined to be the best value to the Government and submits an overall price that is determined to be fair and reasonable by the contracting officer.

6. The solicitation will be issued on an FOB Destination basis in accordance with FAR 47.304-1(g)(5). All offered products MUST meet the provisions of DFARS 252.225-7012 Preference for Certain Domestic Commodities.

Availability of solicitations, FAR 5.102(d) applies, as our office no longer issues solicitations or amendments in paper form.

It is estimated that the Solicitation will be posted on https://www.dibbs.bsm.dla.mil/ within 15 days of this notice. [Information on the DLA Internet Bid Board System ("DIBBS")]
[Domestic-content-only notice.]
[Information on how to request specifications.][12]

---

[12] https://govtribe.com/opportunity/federal-contract-opportunity/rifleman-set-with-advanced-tactical-assault-panel-atap-spe1c119r0021amendment

It appears that DLA is contemplating a new contract award under the solicitation, that would include production of the ATAP by a commercial entity rather than a JWOD workshop.

33.     DLA has not required Propper to order the ATAP from SEKRI.  This is in violation of 41 C.F.R. § 51-5.2.  If DLA makes another award under the solicitation, based on its amendment, then whoever receives that order, which will include the ATAP, will not be required to order the ATAP from SEKRI.  This is in violation of 41 C.F.R. § 51-5.2.

34.     DLA is not the "end-user" for any ATAP units that it would acquire; the end-user remains the U.S. Army.  DLA would be supplanting the Army's own supply of ATAP units, from SEKRI, with ATAP units that DLA would be acquiring solely then to turn over to the Army.  Put differently, ATAP is an Army requirement, not a DLA requirement.

## SUMMARY OF THE VIOLATIONS OF LAW

35.     Under the Procurement List, SEKRI is the mandatory source of supply for the ATAP, as well as "replacement commodities," "variations," and "essentially the same," or "similar" items vis-à-vis the ATAP.  A decision by the United States to proceed with any other source of supply for the ATAP (whether individually, or as part of the MOLLE) is a violation of law.  SEKRI seeks injunctive and declaratory relief prohibiting federal procurement of the ATAP (or "similar" items, *etc.*) from anyone other than SEKRI.

36.     The Committee has determined that the ATAP is suitable for production by SEKRI.  Under 41 C.F.R. § 51-5.1 DLA therefore is required to refer the ATAP to the Committee or a central nonprofit agency.  (If no such determination had been made, then DLA would be required to provide the Committee or a central nonprofit agency with the information needed to enable the Committee to determine whether the ATAP is suitable to be furnished by a non-profit agency.  DLA has failed to do so.)

17

37.     SEKRI therefore seeks injunctive and declaratory relief prohibiting DLA from procurement of the ATAP (or "similar" items, *etc.*) from anyone other than SEKRI.

38.     The TAP solicitation, as "amended" appears to require the provision of ATAP as part of MOLLE.  DLA has not required Propper or any other awardee under the Solicitation to order the ATAP from SEKRI.  This violates 41 C.F.R. § 51-5.2.

## FIRST CLAIM

39.     The allegations in paragraphs 1-38 are incorporated by reference.

40.     For the reasons stated above, the United States has violated: (a) statutes and (b) regulations of executive departments.  Therefore, under the "Little Tucker Act," SEKRI is entitled to the injunctive and declaratory relief specifically set forth in the Prayer for Relief below.

## SECOND CLAIM

41.     The allegations in paragraphs 1-38 are incorporated by reference.

42.     For the reasons stated above, the final agency action of the United States, to obtain an item on the "Procurement List" from a source other than a workshop for the blind or disabled, is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and in excess of statutory jurisdiction, authority, or limitations.  Therefore, under the APA, SEKRI is entitled to the injunctive and declaratory relief specifically set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff SEKRI respectfully requests an order and judgment:

(a) Enjoining federal acquisition of the ATAP, and any replacement item or variation of the ATAP, and any item that is "essentially the same" or "similar," from any source other than SEKRI (or another workshop for the blind or disabled that is qualified under the JWOD Act);

(b) Awarding attorney's fees to SEKRI under the Equal Access to Justice Act and any other applicable law; and

(c) Awarding such other or further relief as the Court may deem just and appropriate.

Respectfully submitted,

/s/ Alan Grayson
Alan Grayson, Esq.
DC Bar No. 388633
Mailing address:
8419 Oak Park Road
Orlando, FL 32819
(407) 493-9633
[no fax number]
grayson@graysonlaw.net

Date: September 28, 2021                    Counsel for SEKRI